UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DARLENE C. GORING | * | CIVIL ACTION NO. 08-CV-00634 |
| | * | |
| VERSUS | * | |
| | * | JUDGE BRADY |
| BOARD OF SUPERVISORS OF LOUISIANA | * | |
| STATE UNIVERSITY AND AGRICULTURAL | * | |
| AND MECHANICAL COLLEGE | * | MAGISTRATE RIEDLINGER |

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT FILED BY THE LSU BOARD OF SUPERVISORS

MAY IT PLEASE THE COURT:

Defendant, the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "LSU Board of Supervisors" or "Defendant"), respectfully submits this memorandum in support of its motion for summary judgment seeking to dismiss this action in its entirety. Plaintiff, Darlene C. Goring ("Goring" or "Plaintiff"), is an LSU Law Center faculty member who was awarded indeterminate tenure and promoted to full Professor of Law. Notwithstanding her privileged status at the Law Center, Plaintiff claims that the LSU Law Center engaged in "unlawful retaliation, discrimination, and harassment based upon [Plaintiff]'s race under Federal and State law, specifically Title IX and Title VII" and Section 42 U.S.C. § 1981 and in "reprisal" within the meaning and intent of La. R.S. 23:967.[1] Plaintiff also alleges that she is being

---

[1] Petition, ¶18; Supplementing and Amending Petition, ¶ 18a.

paid and promoted "in a disparate fashion relative to her white male comparators as an African American female."[2]

Plaintiff filed this action in August 2008, immediately prior to filing an application for promotion to full professor. The action focused on alleged discrimiantion and retaliation with regard to the denial of a prior untimely request for promotion in 2007. Plaintiff's timely 2008 application for promotion to full professor was granted in 2009, during the pendency of this action. Despite the promotion and her inability to specify any detriment, Plaintiff has amended and continued this litigation, citing a hodgepodge of minor episodes, second-hand anecdotes and interpersonal conflicts, largely of her own making, to support her groundless allegations.[3] Plaintiff's claims are wholly without merit, do not raise any genuine issue of material fact and should be dismissed on this motion for summary judgment.[4]

## I. Factual Background

Plaintiff was hired by the LSU Law Center in August 2002 as a Tenure Track Associate Professor.[5] In the Fall of 2005, Plaintiff sought tenure but did not simultaneously seek consideration for promotion to full professor, as she was authorized to do by the Law Center Statement of

---

[2]Supplementing and Amending Petition, ¶16a.

[3] Plaintiff's claims of discrimination date back many years and concern numerous individuals. In this case alone her imagined grievances involve both of the two administrations of the LSU Law Center in place during her employment.

[4]Defendant has attached excerpts and certain numbered exhibits from Plaintiff's deposition taken on June 22, 2009 to its Motion as Attachment A. Defendant has also attached excerpts from other depositions as Attachments B through K. For the convenience of the Court, the initial citation to a deposition excerpt will be identified by its Attachment letter and then thereafter by the name of the deponent only.

[5]Petition, ¶3. Before coming to the LSU Law Center, Plaintiff had been denied tenure by the University of Kentucky Law School. She subsequently sued the University of Kentucky Law School alleging race discrimination and the claim was settled. Attachment A, Goring Depo., Pg. 40, Ln. 13-17; Pg. 113, Ln. 15-Pg. 115, Ln. 8; Pg. 391, Ln. 1-4.

2

Procedures and Standards on Promotion, Tenure and Review ("T&P Rules"). Plaintiff testified that the members of her tenure subcommittee[6] as well as her close friend and colleague, Prof. Michael Malinowksi, advised her to seek tenure but not simultaneous promotion.[7] At the time, there was no "unified agreement" amongst the faculty as to whether the T&P Rules, which had been amended in 2000 to allow for a simultaneous award of tenure and promotion to full professor, required a tenure candidate to demonstrate a greater level of accomplishment in order to achieve simultaneous promotion to full professor.[8] Plaintiff understood that the colleagues giving her advice were confident that the faculty would support tenure alone, but were concerned about Plaintiff's prospects for promotion to full professor given the fact that some faculty members felt that tenure and promotion to full professor involved two separate procedures and two separate standards.[9]

Plaintiff admits that the subcommittee charged with evaluating her did not intentionally discriminate against her in giving her advice not to seek simultaneous promotion to full professor along with her tenure request.[10] Plaintiff acknowledges that those individuals were acting in her best interest but contends that the subcommittee members "intentionally steered [her] wrong by not contacting the [full] Promotion and Tenure Committee so that everybody on the faculty would have

---

[6]The Tenure and Promotion Committee ("T&P Committee") appoints a three person subcommittee of tenured professors to evaluate and make recommendations regarding the teaching, scholarship and service of professors requesting promotion and/or tenure. The subcommittee empaneled for Plaintiff's tenure request in 2005 consisted of Profs. Katherine Spaht, John Devlin and Glenn Morris. Goring Depo., Ex. 4.

[7]Goring Depo., Pg. 154, Ln. 5-Pg. 156, Ln. 20; Pg. 158, Ln. 6-18; Attachment B, Morris Depo., Pg. 57, Ln. 17-Pg. 58, Ln. 9.

[8] *Id.*

[9]Goring Depo., Pg. 158, Ln. 6-18.

[10]Goring Depo., Pg. 163, Ln. 22-Pg. 164, Ln 11.

3

a clear understanding of what the rules were...."[11] Plaintiff claims that simply because the subcommittee members were "white people who live in the State of Louisiana" and "white people in Louisiana have been socialized to be racists" that they automatically had a certain amount of racial animus that could not be separated from their advice to Plaintiff.[12]

Plaintiff personally reviewed the T&P Rules and fully understood that she could seek both tenure and promotion.[13] She was also aware that Prof. Malinowski had previously applied for and received simultaneous tenure and promotion under the amended T&P Rules.[14] Yet, after receiving advice from Prof. Malinowski and the members of her subcommittee, she decided to seek only tenure. She testified:

> Q.: ...And you decided after talking with your subcommittee and talking with Professor Malinowski not to seek both, correct?
>
> A.: Professor Malinowski, members of my subcommittee, and I think other members of the faculty. **I decided** that if I sought both, I'd be risking the tenure and I wasn't willing to risk the tenure...(Emphasis Added)[15]

The decision to seek tenure only was Plaintiff's decision to make. She made it based on her own understanding of the amendment to the rules and of the uncertainty among the voting faculty as to whether more was required to achieve promotion than tenure alone. Based upon Plaintiff's own decision not to seek simultaneous promotion to full professor, Plaintiff's subcommittee considered her request for tenure only and recommended that she be awarded tenure. The tenured faculty voted

---

[11]Goring Depo., Pg. 170, Ln. 18-Pg. 171, Ln. 18.

[12]Goring Depo., Pg. 163, Ln. 22-Pg. 164, Ln. 24.

[13]Goring Depo., Pg. 146, Ln. 17-24.

[14]Goring Depo., Pg. 147, Ln. 24-Pg. 149, Ln. 25.

[15]Goring, Depo., Pg. 149, Ln. 17-24.

4

unanimously in favor of Plaintiff's application for tenure on November 9, 2005.[16] The faculty vote was for tenure only, not promotion, and was likewise consistent with Plaintiff's limited application. In April 2006, the LSU Board of Supervisors considered and approved Plaintiff for tenure only.

In 2006, Plaintiff made no request that she be considered for promotion to full professor. In November 2007, she did request to be considered for promotion to full professor, but that request was not made timely; indeed, Plaintiff made her request two months late.  [17]  The T&P Rules explicitly require tenured candidates who are seeking promotion to full professor to request such promotion no later than September 15.[18] The September 15 deadline is important to ensure careful evaluation of requests. Once notified of a faculty member's desire for consideration, the T&P Committee will empanel a subcommittee to review and prepare a report on the applicant's teaching, scholarship and service. Additionally, the full faculty needs time to observe the applicant's teaching and to review her scholarship.[19] Further, the subcommittee must identify outside reviewers for the applicant's scholarship and afford those reviewers a reasonable period of time to return a report before the November faculty meeting at which promotion and tenure applications are considered.[20]

Plaintiff's failure to timely request promotion in 2007 was knowing and intentional. In early August 2007 (more than a month before the September 15 deadline), Prof. Murchison, then Chairman of the T&P Committee, asked Plaintiff if she intended to seek promotion to full

---

[16]Goring Depo., Ex. 5.

[17]Goring Depo., Pg. 196, Ln.11-14; Pg. 201, Ln. 8 - 14.

[18]Goring Depo., Ex. 9, Section 5(D)(2).

[19]Morris Depo., Pg. 25, Ln. 4-20; Attachment C, Murchison Depo., Pg. 17, Ln 16-Pg. 18, Ln. 4.
[20]*Id.*

5

professor.[21] Plaintiff advised Prof. Murchison that she did not intend to seek promotion.[22] However, on November 12, 2007, Plaintiff became angered when she learned that a colleague was to be considered for simultaneous promotion and tenure and immediately emailed Prof. Murchison asking to be considered for promotion.[23] Plaintiff acknowledged that her request was "untimely." Her request was nevertheless added to the agenda for the November 14, 2007 faculty meeting.[24] At that meeting, without addressing the merits of Plaintiff's application, the faculty refused to consider Plaintiff's request for promotion because it was submitted long after the September 15 deadline and just two days prior to the faculty meeting.[25]

In the Fall of 2008, shortly after she filed this action on August 12, 2008, Plaintiff timely submitted a request for consideration for promotion to full professor. The faculty voted in favor of the promotion and both Chancellor Weiss and LSU System President John Lombardi recommended her promotion. Plaintiff was promoted to full professor by the LSU Board of Supervisors in July 2009 and holds that position today.

During her time at LSU, Plaintiff has had a strained relationship with multiple members of the Law Center administration, both before and after the arrival of Chancellor Weiss, and has had serious interpersonal conflicts with the Law Center's African American students. In or around the Spring of 2006, Plaintiff began a bitter clash with certain African-American students, including the

---

[21] Murchison Depo., Pg. 24, Ln. 9-19.  It is the practice of the chair of the T&P Committee to visit with all potentially eligible faculty members well before the September 15 deadline to determine whether they are interested in seeking promotion or tenure.

[22]Murchison Depo., Pg. 24, Ln. 17- Pg. 26, Ln. 4.

[23]Goring Depo., Ex. 7.

[24]Goring Depo., Ex. 7.

[25] Murchison Depo., Pg. 39, Ln. 3- Pg. 41, Ln. 12; Morris Depo., Pg. 30, Ln. 5- Pg. 31, Ln.2.

6

student-elected President of the Black Law Students Association ("BLSA"), Daphne LaSalle '07 ("Capt. LaSalle") and her successor, Ashley Johnson '08.[26] As a result, Plaintiff refused to attend any BLSA activities in Fall 2006.[27]

In January 2007, Capt. LaSalle attended the BLSA Mock Trial Convention in Miami at her own expense.[28] Capt. LaSalle attended the conference meetings dressed in business attire, but wore more casual clothing to a nightclub on a Saturday night after the conference.[29] Pictures taken of Capt. LaSalle and Ms. Johnson at the Miami nightclub (which was not an official convention event) were linked to Capt. LaSalle's Facebook page. Plaintiff did not attend the convention, but evidently managed to view and criticize harshly the attire of Ms. Johnson and Capt. LaSalle in the pictures.

Plaintiff took her grievance with the students' off-campus dress to Prof. Cheney C. Joseph, the Vice-Chancellor of Academic Affairs ("VC Joseph").[30] VC Joseph tried unsuccessfully to calm the waters. Within weeks of the convention, Plaintiff called a mandatory meeting of the black

<hr />

[26] Attachment D, LaSalle Depo., Pg. 19. Ms. LaSalle graduated from the Law Center in 2007. She is currently a Captain O3 in the United States Air Force and she works in the Defense Counsel's Office for the JAG Corp. During her time at the Law Center, Ms. LaSalle spent her summers performing internships on active duty Air Force Bases and worked part time for the Louisiana Office of Disciplinary Counsel. During her undergraduate studies at LSU, Ms. LaSalle served as the Corp Commander for the ROTC, was elected to the Homecoming Court, was a member of ODK, Leadership LSU, AKA Sorority, President of the Black Student Untion and was selected as Who's Who Among Students at American Universities and Colleges. LaSalle Depo., Pgs. 9, 10, 15, 17, 166-168. Capt. LaSalle was President of BLSA in 2006-2007 and Ms. Johnson succeeded Capt. LaSalle as President of BLSA in 2007-2008.

[27] LaSalle Depo., Pg. 37, Ln. 18-Pg. 38, Ln. 4.

[28] LaSalle Depo., Pg. 41, Ln. 5-23.

[29] LaSalle Depo., Pg. 45, Ln. 17-Pg. 47, Ln. 10.

[30] After Plaintiff first raised the issue with VC Joseph, he advised that he did not think that "we, from an institutional aspect can regulate the attire of our students under these circumstances." When Plaintiff persisted in her complaints to VC Joseph, he then offered that "as their advisor and mentor, [Plaintiff] can convey on a personal and confidential, and in a good natured, manner, your very legitimate concern about their attire- as a reflection on them... and encourage the next generation of leaders to be more attentive to impressions created by attire." Goring Depo., Ex. 21.

7

female students which Capt. LaSalle could not attend due to JAG Corp obligations.[31]  Fearing

Plaintiff's threats that she would be "dealt with severely" for failing to attend this meeting, Capt.

LaSalle asked VC Joseph to mediate a meeting between her and Plaintiff.[32]  In response, VC Joseph

asked Plaintiff to meet with Capt. LaSalle and Ms. Johnson  in a "friendly" and "non-

confrontational" manner.[33]  The meeting turned out to be anything but non-confrontational and

friendly.  Plaintiff called Capt. LaSalle a "prostitute and a whore" in front of VC Joseph.[34]  Plaintiff

admitted in her deposition testimony that she told Capt. LaSalle that "she was dressed like a slut".[35]

A few months later, at the Law Center's May 2007 graduation ceremony, Capt. LaSalle's

mother confronted Plaintiff and expressed her displeasure that Plaintiff "had called her daughter a

whore."[36] This brief discussion took place in a crowded auditorium.[37]  When Plaintiff became aware

that photographs of the confrontation were posted on Capt. LaSalle's personal Facebook page, she

became irate and contacted VC Joseph, who immediately met with Capt. LaSalle and asked her to

remove the photographs.  The photographs were removed during the meeting.[38]  When Plaintiff

continued to complain about certain of Capt. LaSalle's Facebook postings, VC Joseph asked Capt.

---

[31]LaSalle Depo., Pg. 49, Ln. 4-23; Pg. 53, Ln. 5-15.

[32]LaSalle Depo., Pg. 55, Ln. 4-Pg. 58, Ln. 16.

[33]Goring Depo, Ex. 22.

[34]LaSalle Depo., Pg. 62, Ln. 6-Pg. 63 Ln. 15.

[35]Goring Depo., Pg. 283, Ln. 9-22.

[36]Goring Depo., Pg. 327, Ln. 5-Pg. 328, Ln. 18.

[37]*Id.*

[38]Attachment E, Joseph Depo., Pg. 60, Ln. 8-Pg. 61, Ln. 20.

8

LaSalle to delete her Facebook page completely and she immediately complied with his request.[39]

Despite the reasonable efforts undertaken by VC Joseph to assist Plaintiff in resolving her personal dispute, Plaintiff took one last potentially devastating swing in her fight with the BLSA President. Using LSU Law Center letterhead, Plaintiff sent a formal complaint regarding Capt. LaSalle's character to the Louisiana Committee on Bar Admissions (seeking to deny Capt. LaSalle admission to the bar) and copied her future employer, the United States Air Force JAG Corps.[40] As a result of Plaintiff's letter, Capt. LaSalle was subjected to an investigation by the JAG Corp.[41]

Plaintiff continued to have conflict with the members of BLSA into the Fall of 2007. BLSA members advised Todd Bruno, the coordinator of the Law Center's advocacy program, that they would not participate in any team to be coached by Plaintiff.[42] In August 2007, Plaintiff nevertheless decided that she would end her self-imposed hiatus from BLSA activities and that she would coach the BLSA advocacy team in the 2007 Fall semester.[43] Plaintiff also announced that she wanted to select the team participants herself, a practice contrary to the established practice of having a school-wide competition for advocacy teams.[44]

---

[39]LaSalle Depo., Pg. 84, Ln. 15-Pg. 86, Ln. 12.

[40]Goring Depo, Ex. 23 & 24; Capt. LaSalle testified regarding the well crafted timing of the letter: "...I got the letter on a Monday. It was exactly one week before the Bar Exam. It was very well timed in order to distract someone or bring their world to a crashing halt as best you could. The first thing I did was – quite honestly, I sat on my floor and I cried, because I didn't realize that people were really that evil." LaSalle Depo., Pg. 90, Ln. 11-17.

[41]LaSalle Depo., Pg. 93, Ln. 15-Pg. 94, Ln. 8. Despite Plaintiff's strenuous efforts, Capt. LaSalle was ultimately admitted to the Louisiana bar and the JAG Corp.

[42]Attachment F, Bruno Depo., Pg. 35, Ln. 8-Pg. 37, Ln. 8; Attachment G, Johnson Depo., Pg. 57, Ln. 3-Pg. 58, Ln. 3; Pg. 60, Ln. 2-Pg. 62, Ln. 14.

[43]Bruno Depo., Pg. 22, Ln. 21-Pg. 24, Ln. 10.

[44]Morris Depo., Pg. 32, Ln. 11- Pg. 33, Ln. 3; Bruno Depo., Pg. 24, Ln. 4-25.

9

Vice Chancellor for Business and Financial Affairs Glenn Morris ("VC Morris") and VC Joseph met with Plaintiff to remind her of the mechanism in place for the school-wide selection of teams and to advise her that she would not be allowed to have her own selection process.[45] During that meeting VC Morris and VC Joseph also discussed with Plaintiff the problem that the BLSA students were "adamant" that they would not participate if Plaintiff served as their coach.[46] When VC Morris advised Plaintiff that she would not be allowed to have a separate selection process, Plaintiff became angry and "withdrew herself" from participation with the team.[47] VC Morris did not remove Plaintiff as the BLSA mock trial team coach.[48] Plaintiff's email confirms that the decision not to participate with the BLSA advocacy teams was her own.[49]

## II. Law and Argument

### A. Claims Prior to April 2007 Should be Dismissed As Untimely

To preserve a claim under Title VII, Plaintiff must file a complaint with the Louisiana Commission on Human Rights ("LCHR") and/or the EEOC within 300 days of the alleged discriminatory act. For purposes of determining the timeliness of Plaintiff's claims, each incident of alleged discrimination or a retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice." Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire that occur before the timely filing period should not be

---

[45]Morris Depo., Pg. 33, Ln. 4-Pg. 35, Ln. 20.

[46]Morris Depo., Pg. 37, Ln. 1-23.

[47]Id.

[48]Morris Depo, Pg. 38, Ln. 5-24.

[49]Goring Depo., Ex. 26.

considered actionable by the Court. Only those acts that occurred within 300 days before Plaintiff

filed her charge with the LCHR on February 6, 2008 are actionable. *See Nat'l R.R. Passenger Corp.*

*v. Morgan*, 536 U.S. 101, 110, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). As such, any act occurring

prior to April 12, 2007, including any failure to promote claim occurring in 2005, is untimely.

## B.  Summary Judgment Standard[50]

With regard to the remainder of Plaintiff's claims, summary judgment is appropriate when

the pleadings, answers to interrogatories, admissions, and affidavits on file indicate that there is no

genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265

(1986). The movant need only demonstrate that the record lacks sufficient evidentiary support for

the non-movant's case. *Id.* The non-movant must set forth more than conclusory allegations and

unsubstantiated assertions to satisfy its burden of showing that there is a genuine issue for trial. *See*

*Grimes v. Dep't of Mental Health*, 102 F.3d 137, 139-40 (5th Cir.1996).

Because Plaintiff relies on circumstantial evidence, this Court must use a "modified

McDonnell Douglas" burden shifting framework to analyze Plaintiff's claims. *See Rachid v. Jack*

*in the Box, Inc.*, 376 F.3d 305, 311 (5th Cir. 2004)(following the Supreme Court's opinion in *Desert*

*Palace, Inc. v. Costa*, 539 U.S. 90 (2003)). Under this framework, Plaintiff must first create a

presumption of intentional discrimination by establishing a prima facie case of discrimination by a

preponderance of the evidence. The burden then shifts to Defendant to articulate a legitimate, non-

---

[50]Claims of both discrimination under Title VII and under §1981 are evaluated under the same standard. *Alvarado v. Shipley Donut Flour & Supply Co., Inc.*, 526 F.Supp.2d 746, 754 (S.D.Tex.2007). The same is true for retaliation claims. *Id.* at 762 ("The elements of a retaliation claim under § 1981 are identical to the Title VII elements." citing *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004)). A plaintiff who is unable to show a prima facie case cannot survive a summary judgment challenge as to Title VII and §1981 claims.

11

discriminatory reason for its actions. The burden on Defendant at this stage is one only of production of a non-discriminatory reason, not persuasion. *Pearcy v. Miller Brewing Co.,* 2006 WL 1030398 (E.D. La. 2006). If Defendant sustains this simple burden, the prima facie case is dissolved, and the burden shifts back to Plaintiff to establish either: (1) that Defendant's proffered reason is not true but is pretext for discrimination; or (2) that Defendant's reason, while true, is not the only reason for its conduct, and another motivating factor is the Plaintiff's protected characteristic. *Id.*

## C.     Specific Claims

Plaintiff asserts multiple claims in her amended Petition. All of the claims, however, suffer from a common, fatal defect: Defendant has not done anything to harm Plaintiff. Thus, Plaintiff cannot meet the basic legal requirement that she show she has suffered from an "adverse employment action" or that the alleged harassment affected the "terms, conditions, privileges of [her] employment." *See e.g., Rico Sanz v. State of Louisiana,* 2006 WL 3147730, 7 (M.D. La. 2006); *Septimus v. University of Houston,* 399 F.3d 601, 611 (5th Cir. 2005). Plaintiff has been granted indefinite tenure and promotion to full professor. She has not alleged or testified, nor is there a shred of any other evidence, that she was treated unfavorably with regard to any other aspect of her employment. Plaintiff continues to enjoy the considerable privileges and emoluments of a tenured full professor at the LSU Law Center. As such, all of her claims must fall due to her inability to establish any specific harm suffered. Defendant will now address the elements of each issue below.[51]

---

[51]Plaintiff attempts to meld alleged "wrongs" into a global claim; however, as each type of discrimination has different elements, the Court must separate and analyze each independently. See *Rico Sanz v. State of Louisiana,* 2006 WL 3147730, Fn. 4, (M.D. La. 2006).

12

1.      **Plaintiff's Claims Relating to the Failure to Promote to Full Professor in 2005 Should Be Dismissed**

Even if the Court considers claims surrounding the November 2005 promotion events timely, it is undisputed that Plaintiff did not actually apply for the promotion.[52] The evidence is clear. Plaintiff admits that she herself made the decision not to seek promotion to full professor in November 2005.[53] Summary judgment is appropriate in failure to promote cases where the plaintiff failed to apply for the job and this claim should be dismissed. *See Smith-Ealy v. Standard Enterprises, Inc.*, 2009 WL 891893 (W.D. La. 2009).

2.      **Plaintiff's Claims Relating to the Failure to Promote to Full Professor in 2007 Should be Dismissed**

To establish a prima facie case of discrimination under Title VII in failure to promote cases, Plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position she sought; (3) she suffered an adverse employment action; and (4) others similarly situated but outside the protected class were treated more favorably. *See Rico Sanz, supra at* 3. Plaintiff's claim based on her untimely promotion application is patently deficient on multiple grounds.

It is undisputed that Plaintiff knew that if she wanted to seek promotion to full professor in the Fall of 2007, she had to make that request by September 15, 2007, yet she failed to do so until two months beyond the deadline.[54] The faculty refused to consider her request simply because it was

---

[52]Plaintiff's claim related to the 2005 tenure and promotion process should be dismissed as untimely. See Section II(A), *supra*.

[53]Goring, Depo., Pg. 149, Ln. 17-24.

[54]Goring Depo., Pg. 201, Ln. 8-14. It is likely that Plaintiff did not seek promotion by the September 15 deadline due to her failure to produce any scholarship after receiving tenure. She had represented to the T&P Committee in a memorandum dated October 31, 2005 that she had plans to write an article, but as late as November 2007, she had not yet written it or any other scholarly works. Goring Depo., Pg. 243, Ln. 25-Pg. 244, Ln. 21.

13

untimely; the merits of her request were never considered in 2007. Plaintiff's failure to timely request promotion renders her "unqualified" and therefore, unable to establish the second element of the prima facie case. Further, Plaintiff cannot establish the fourth element-that others were similarly situated but were treated more favorably. Although she can assert that other applicants were granted tenure and promotion, she cannot establish that those applicants submitted untimely requests.[55] Plaintiff cannot establish the elements of a prima facie case.

Even if Plaintiff were able to establish a prima facie case, summary judgment is appropriate because Defendant can articulate a legitimate, non-discriminatory reason for refusing to consider her request – the impossibility of orderly consideration of her request for promotion given the serious tardiness of the application. Plaintiff cannot cite any comparable situation in which the deadline was ignored or otherwise establish pretext or unlawful motive. As such, Plaintiff cannot show that the reason articulated by the faculty was a pretext or that race/gender was a motivating factor in their decision and summary judgment is appropriate.[56]

Plaintiff may contend that the fact that her 2008 promotion request was ultimately granted shows that the faculty erred in failing to consider her untimely request in 2007. That argument is meritless and ignores the critical distinction between the two requests. Plaintiff's request for

---

[55]In fact, Prof. Murchison testified that, years earlier, he personally attempted to apply for promotion to full professor after the September 15 deadline and was told that he would have to wait and make a timely application the following year. Murchison Depo., Pg. 41, Ln. 13-Pg. 43, Ln. 25. Also, Prof. Corbett testified that he has never seen the T & P Committee make an exception to the September 15 deadline since he began at the Law Center in 1991. Attachment H, Corbett Depo., Pg. 46, Ln. 19-24. Prof. Morris testified that he could not recall any occasions where a request was considered when it was made substantially after September 15 and noted that most requests are made well in advance of that deadline. Morris Depo., Pg. 54, Ln. 3-19.

[56]In undertaking the pretext inquiry, the Court should consider that the faculty members who initially hired and then granted tenure (permanent employment) to Plaintiff are substantially the same faculty members who decided not to consider her untimely request. Circumstances involving the same actors create "an inference that discrimination was not the employer's motive in terminating the employee." *Faruki v. Parsons S.I.P., Inc.,* 123 F.3d 315, 320 n. 3 (5th Cir.1997) (citing *Brown v. CSC Logic, Inc.,* 82 F.3d 651, 658 (5th Cir.1996)).

14

promotion in 2008 was timely made and was thus considered and granted. Plaintiff's request for promotion in 2007 was made some two months after the September 15 deadline and was denied as untimely.

Even if Plaintiff could make a valid argument that the faculty erred in making the decision not to consider Plaintiff's promotion request in 2007, which is denied, the issue before the Court is **not** whether the faculty made an erroneous or unfair decision. Instead, the issue is whether that decision was prompted by unlawful animus. *See Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1091 (5th Cir.1995) ("[t]he question is not whether an employer made an erroneous decision; it is whether the decision was made with a discriminatory motive"). *See also Nieto v. L & H Packing Co.,* 108 F.3d 621, 624 (5th Cir.1997). Employment discrimination laws are "not intended to be a vehicle for judicial second-guessing of employment decisions nor ... to transform the courts into personnel managers." *EEOC v. La. Office of Cmty. Servs.,* 47 F.3d 1438, 1448 (5th Cir.1995). While Plaintiff may have developed the subjective belief that the faculty's decision was discriminatory, the Fifth Circuit has explained that "a subjective belief of discrimination, however genuine [may not] be the basis of judicial relief." *Lawrence v. Univ. of Texas Med. Branch at Galveston,* 163 F.3d 309, 313 (5th Cir.1999). Plaintiff is unable to provide anything more than her subjective belief that she was discriminated against, and therefore, summary judgment is appropriate on this alternative ground.

### 3.    Plaintiff's Claims Regarding the BLSA Student Conflict Should Be Dismissed

In Paragraphs 5-7 of the Petition, Plaintiff references her personal dispute with Capt. LaSalle. Plaintiff alleges that she was required to speak to Capt. LaSalle regarding her dress and that when she complained about the content of Capt. LaSalle's Facebook page she suffered harassment and retaliation. She further alleges that she was "removed from her position as trial team coach by

15

Chancellor Weiss."[57] Plaintiff does not set forth any actionable claim for disparate treatment or hostile work environment based on the facts alleged and these claims should be dismissed.

To establish a prima facie case of disparate treatment, Plaintiff is required to show that: "(1) [she] is a member of a protected class; (2)[she] was qualified for her position; (3)[she] was subject to an adverse employment action; and (4) ...that others similarly situated were treated more favorably." *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir.2001). Plaintiff appears to vaguely assert that she was treated disparately with regard to her personal fight with Capt. LaSalle and her alleged removal as the BLSA mock trial coach. Plaintiff's claim of disparate treatment is inherently flawed.

First, Plaintiff cannot establish the third element, that she was subjected to an adverse employment action. The Fifth Circuit has adopted a narrow view of what constitutes "an adverse employment action". *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000)(adverse employment actions are "discharages, demotions, refusals to hire, refusals to promote and reprimands.").[58] An employment action is only actionable if it amounts to an ultimate employment decision and effects a "material change in the terms or conditions of employment." *Rico Sanz v. State of Louisiana*, 2006 WL 3147730, 7 (M.D. La. 2006). Even assuming that Plaintiff was

---

[57]Petition, ¶ 7. In her deposition, Plaintiff testified to the contrary and admitted that Chancellor Weiss never told her that she was removed as the BLSA mock trial coach. In fact, Plaintiff testified that Chancellor Weiss told her there was a miscommunication. Goring Depo., Pg. 346, Ln. 10-Pg. 347, Ln. 3.

[58]The Fifth Circuit has explained that the reason for not expanding the list of adverse employment actions is to ensure that federal courts are not enmeshed in "relatively trivial" employment matters. *Breaux v. City of Garland,* 205 F.3d 150 (5th Cir. 2000). The Fifth Circuit has even held, in the education context, that "decisions concerning teaching assignments, pay increases, administrative matters, and departmental procedures" while extremely important to the plaintiff do not rise to the level of constitutional deprivation. *Dorsett v. Board of Trustees for State Colleges & Univ.*, 940 F.2d 121 (5th Cir. 1991)("We have neither the competency nor the resources to undertake to micromanage the administration of thousands of state educational institutions...Of all fields that the federal courts 'should hesitate to invade and take over, education and faculty appointments at [the university] level are probably the least suited for federal court supervision'.")

16

removed as the BLSA mock trial coach (as opposed to her quitting as is indicated by the evidence), being removed as an unpaid coach of a voluntary student activity, is far too trivial an event to qualify as an adverse employment action under *Breaux*. Further, Plaintiff cannot establish that Defendant gave preferential treatment to another employee who was a "nearly identical, similarly situated individual" under "nearly identical circumstances." *Bryant v. Compass Group USA, Inc.*, 413 F.3d 471, 478 (5th Cir. 2005). *See Berquist v. Wash. Mut. Bank,* 500 F.3d 344, 353 (5th Cir.2007).

Moreover, the actions of Defendant in relation to the conflict between Plaintiff and the BLSA students were completely appropriate. If Plaintiff was removed as the trial team coach, which is disputed, Defendant's actions were reasonable and were not racially motivated. The evidence reveals that the students refused to participate if Plaintiff was to be the coach, rendering her unqualified for the task.[59] If Plaintiff was removed (which is denied) it would have been because of her lack of the qualifications necessary for the job, i.e. the ability to work well with the students, not her race.

If Plaintiff's allegations concerning the actions of Capt. LaSalle are included in her Petition in an effort to establish a hostile work environment claim, that claim should likewise be dismissed. Defendant is not legally responsible for and lacked control over the actions of Capt. LaSalle and her mother. The content of a student's personal Facebook page cannot be monitored or controlled by Defendant. Likewise, Defendant cannot anticipate and deflect the actions of a parent. An employer is only responsible for harassment by a non-employee when it knows or should have known of the

---

[59]*See Rico Sanz,* Supra, 8 (wherein this Court stated that a "myriad of other factors" would determine whether an indiviaul is qualified, including the ability to get along with others).

17

actions and failed to take corrective measures. See 29 C.F.R. §1604.11(e).[60] Defendant took

appropriate action once it learned of the dispute. When Plaintiff complained about Capt. LaSalle's

actions to VC Joseph, he immediately tried to resolve the personal issues between them. VC Joseph

even succeeded in having Capt. LaSalle delete her Facebook page, a request which the student did

not have to honor. When an employer takes prompt remedial action to protect the claimant, the

employer has no Title VII liability. *Nash v. Electrospace Sys., Inc.,* 9 F.3d 401, 402 (5th Cir.1993).

The Fifth Circuit has "often found that an employer took prompt remedial action as a matter of law."

*Hockman,* at 329; *See also Hirras v. Nat'l R.R. Passenger Corp.,* 95 F.3d 396, 400 (5th Cir.1996).

Even if Defendant was responsible for the actions of Capt. LaSalle or her mother, Plaintiff

cannot establish the remaining elements of a hostile work environment claim: that (1) she belongs

to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained

of was based on her race; and (4) the harassment affected a term, condition, or privilege of

employment. *Septimus v. University of Houston,* 399 F.3d 601, 611 (5th Cir. 2005). With regard

to the third element, Plaintiff has no evidence that whatever alleged "harassment" she suffered was

based on her race. Capt. LaSalle was a female African American student. Beyond doubt, any

alleged "harassment" of Plaintiff had nothing to do with their shared race or gender. Further,

Plaintiff cannot establish the fourth element, that the alleged harassment affected a "term, condition

or privilege" of her employment. Harassment only affects a term, condition or privilege of

---

[60]The EEOC's Guideline, provides that "[a]n employer may also be responsible for the acts of non-employees, with respect to ... harassment of employees in the workplace, where the employer ... knows or should have known of the conduct and fails to take immediate and appropriate corrective action. In reviewing these cases the Commission will consider the extent of the employer's control and any other legal responsibility which the employer may have with respect to the conduct of such non-employees." While the EEOC Guidelines are intra-agency guidelines not binding on federal courts, they are nevertheless entitled to deference in the courts. *Magnuson v. Peak Technical Servs., Inc.,* 808 F.Supp. 500, 513 (E.D.Va.1992).

18

employment when it is sufficiently severe or pervasive to alter the victim's employment and create an abusive working environment.[61]  The Fifth Circuit has found that summary judgment is appropriate in cases where the behavior complained of was not severe or pervasive. *See Septimus, supra.*[62]  Plaintiff cannot establish that the alleged "harassment" was severe or pervasive. Plaintiff would not have even seen the student's Facebook postings unless she logged onto the student's page. Further, Plaintiff testified that the confrontation with the student's mother was very brief. Plaintiff's claims regarding the BLSA student conflict and mock trial team are meritless and should be dismissed.

## 4.    Plaintiff's Claims Regarding the Student Transfer Policy Should Be Dismissed

Plaintiff further alleges that she was subjected to discrimination because she voiced concerns over the Defendant's former student transfer policy during the Summer of 2007.[63]  This is an utterly groundless claim because, among other things, Plaintiff's views were widely shared by the faculty and the administration which promptly reviewed and amended the policy.

For many years prior to the Spring of 2008, the LSU Law Center had an admission policy for students seeking admission with advanced standing which restricted eligibility to students attending law schools that were members of the Association of American Law Schools ("AALS").[64]  The

---

[61]*Septimus*, 399 F.3d at 611. To determine whether the environment was objectively offensive, courts consider a totality of the circumstances, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance. *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 347 (5th Cir. 2007)

[62] *See also Shepherd v. Comptroller of Public Accounts of State of Texas*, 168 F.3d 871 (5th Cir. 1999); *Hockman v. Westward Communictions, LLC*, 407 F.3d 317 (5th  Cir. 2004); *Williams v. Department of Navy*, 149 Fed.Appx. 264 (5th Cir. 2005).

[63]Petition, ¶ 9-12.

[64]Goring Depo, Ex. 31.

19

policy also required students seeking admission with advanced standing to have been eligible for admission to the Law Center as a first year student. The Admissions and the Executive Committees considered the policy in the Summer of 2007[65] and were generally in agreement that modification of the policy would be desirable. At the conclusion of these discussions, the Admissions Committee undertook the task of reviewing the policy and reporting back to the full faculty. The Admissions Committee recommended the deletion of both the AALS membership and the first year eligibility requirements. The suggested policy modifications were adopted by unanimous vote of the faculty in the Spring of 2008.[66]

Plaintiff does not set forth the supposed adverse action taken against her arising out of these events.[67] The reason is simple- this was not a controversial matter and no one reacted adversely to Plaintiff's views. There is absolutely no basis for Plaintiff's claim of retaliation, when it is undisputed that the policy change was favored and the motion to change the policy passed unanimously.

Under 42 U.S.C. § 2000e-3(a), an employer may not "discriminate against any of his employees ... because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." To establish a prima facie

---

[65] In the Summer of 2007, the Law Center received several applications for transfer that were ineligible under the Law Center's longstanding, published transfer policy. The applications precipitated a discussion of the policy by the faculty, Admissions Committee and the Executive Committee. Plaintiff was a member of the Executive Committee and participated in those discussions.

[66] Goring Depo, Ex. 31.

[67] In fact, in a related email chain, Plaintiff thanked the Executive Committee for the "vigorous discussion" about the policy change. Goring Depo., Ex. 30.

20

Title VII retaliation case[68], Plaintiff must establish that: (1) she engaged in a protected activity; (2) she suffered from an adverse employment action; and (3) there was a causal connection between the activity and the adverse employment action. *Haynes v. Pennzoil Co.*, 207 F.3d 296, 299 (5th Cir. 2000); *Baker v. American Airlines, Inc.,* 430 F.3d 750, 754-55 (5th Cir.2005). Plaintiff does not allege and certainly cannot establish any of the elements of a retaliation claim in connection with these events and as such, this claim should be dismissed summarily.

## 5. Plaintiff's Claims Regarding Chancellor Weiss' Alleged Verbal Abuse Should Be Dismissed

Plaintiff also alleges that Chancellor Weiss became "verbally abusive to her" at an April 16, 2008 faculty meeting when she objected to his proposal to hire a former president of the Louisiana State Bar Association to oversee the Law Center's CLE program.[69] However, the evidence reveals that many faculty members expressed concern about the role of the proposed hire. As VC Morris testified, the "overwhelming majority" of the faculty members expressed opposition to the proposal at the faculty meeting and Chancellor Weiss ultimately did not pursue the hire.[70] Plaintiff admitted in her deposition that Chancellor Weiss did not raise his voice or use profanity.[71] Plaintiff further admitted that Chancellor Weiss never used any words that she found racially offensive.[72] The only comment made by Chancellor Weiss directed to Plaintiff at this meeting was to advise her, in

---

[68]The evidentiary framework established in *McDonnell Douglas* applies to retaliation claims that depend upon circumstantial evidence. *Dumas v. Union Pacific Railroad Co.*, 294 Fed. Appx. 822 (5th Cir. 2008).

[69]Petition, ¶ 14.

[70]Morris Depo., Pg. 41, Ln. 2- Pg. 43, Ln. 24.

[71]Goring Depo., Pg. 370, Ln. 22-Pg. 371, Ln. 13.

[72] Goring Depo, Pg. 373, Ln. 16-23.

21

response to her suggestion that the proposed hire would violate job posting requirements, that general counsel for LSU had advised him that the policy allowed for a waiver of the job posting requirements and that if Plaintiff did not believe him she was free to contact general counsel.[73] Multiple witnesses testified that Chancellor Weiss was not verbally abusive toward Plaintiff and acted professionally at all times.[74]

However, even if it is assumed that Chancellor Weiss spoke inappropriately to Plaintiff (which is categorically denied), such action does not rise to the level of an actionable disparate treatment claim. It is well settled that, absent any verifiable and immediate change in employment status, mere verbal reprimands cannot support a claim of discriminatory treatment. *See King v. Louisiana,* 294 Fed.Appx. 77, 85 (5th Cir. 2008)("Allegations of unpleasant work meetings, verbal reprimands,...and unfair treatment do not constitute actionable adverse employment actions.") Further, a court will not lightly attribute discriminatory motives to a supervisor based on managerial style. *See Webb v. Cardiothoracic Surgery Assocs. of N. Tex., P.A.,* 139 F.3d 532, 539 (5th Cir.1998)(overruled on other grounds by *Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 67 (2006), (a plaintiff must do more than demonstrate his boss was "rude or uncivil"). Moreover, Plaintiff has alleged only one isolated instance of so-called "verbal abuse" by Chancellor Weiss. *See Hockman v. Westward Communications, L.L.C.,* 407 F.3d 317, 328 (5th Cir. 2004) (isolated incidents, unless extremely serious, are not actionable discriminatory acts.).

---

[73]Attachment I, Weiss Depo, Pg. 91, Ln. 5- Pg. 92, Ln. 2; Goring Depo, Pg. 367, Ln. 2-Pg 368, Ln. 6.

[74]Morris Depo., Pg. 42, Ln. 24- Pg. 43, Ln. 9; Attachment J, Spaht Depo., Pg. 116, Ln. 16-25; Murchison Depo., Pg. 51, Ln. 21- Pg. 52, Ln. 21.

22

Further, this alleged incident of "verbal abuse" (even if accepted as true for this motion) does not satisfy the prima facie elements of a hostile work environment claim.[75] Plaintiff cannot establish that the purported harassment (a one time comment at a meeting) affected a term, condition or privilege of her employment. Further, Plaintiff cannot establish that the conduct she alleges was because of her race or gender. In fact, Prof. Malinowski testified that Chancellor Weiss was "unhappy with all of us [faculty]" at the meeting.[76] *See Cross v. FFP Operating Partners, LP*, 73 Fed. Appx. 46 (5th Cir. 2003).[77] Plaintiff has no actionable claim under the facts alleged and as such, this claim must be dismissed.

## 6. Plaintiff's Claims Regarding Chancellor Weiss' Advocacy of Faculty Diversity Should be Dismissed

The Petition also contains allegations relating to a purported statement of Chancellor Weiss at a January 30, 2008 faculty meeting that Plaintiff did not even attend. At this meeting, the faculty discussed a recent "job talk" given by a minority faculty candidate at the Law Center. The "job talk" had not been well received and the faculty was considering whether to invite the candidate back to give a second presentation and whether to provide her feedback on the deficiencies in the first presentation.[78] In that context, Chancellor Weiss noted that he had recently attended a panel

---

[75]See Section C(3), *supra*, for a discussion of those elements.

[76]Attachment K, Malinowski Depo., Pg. 184, Ln. 19-21;

[77]See also, *Rougeau v. Louisiana Dept. of Social Services*, 2008 WL 818961 (M.D. La. 2008) wherein this Court found that the plaintiff had not been subjected to a hostile work environment because of her race, stating, "[w]hile those comments are highly offensive and inappropriate, ... the body of evidence indicates a great deal of frustration with plaintiff's inability to perform her job tasks. However, it does not indicate that such frustration stemmed from systematic discrimination and a conspiracy of racism within the department." *Id*. at 6. Thus, even highly offensive racial comments-a far cry from the single inoffensive statement alleged here-have been held non-actionable.

[78]Malinowski Depo., Pg. 55, Ln. 15-Pg. 58, Ln. 3.

23

discussion on minority faculty recruiting at the AALS annual meeting.[79] Chancellor Weiss advised the faculty that the panel had emphasized that it is often necessary to recruit minority faculty from sources other than the AALS recruiting fair and that when such "non traditional" candidates come to campus, it is often necessary to assist them with parts of the interview procedure (such as the "job talk") with which they may not be as familiar as candidates developed through AALS.[80] Plaintiff wrongly twists Chancellor Weiss' account of the panel's advice into the unfounded allegation that Chancellor Weiss told his faculty colleagues that "minority candidates are less qualified than their white counterparts and should be held to a different (inferior) evaluative standard."[81]

Plaintiff was not present at the January 2008 meeting wherein she alleges this statement was made.[82] At her deposition, Plaintiff offered little support for her second-hand allegation. She testified that her only support for making and verifying the allegation was (i) a conversation with Prof. Malinowski and (ii) a handwritten note by an unknown author.[83] Neither however, come close to supporting Plaintiff's allegation. Prof. Malinowski testified at his deposition that when an objection was raised at the meeting to giving this applicant a "second bite" at the apple, Chancellor Weiss said, "...if we are going to hire qualified, minority candidates, we may need to be more flexible, to let them do another talk and to maybe coach them a little bit."[84] Likewise, the

[79]Weiss Depo., Pg. 92, Ln. 3-Pg. 93, Ln. 16.

[80]*Id.*

[81]Petition, ¶ 8.

[82]Goring Depo., Pg. 379, Ln. 9-10.

[83]Goring Depo., Pg. 381, Ln. 15-Pg. 382, Ln. 6; Goring Depo., Ex. 32.

[84]Malinowski Depo., Pg. 55, Ln. 15-Pg. 58, Ln. 3.

24

handwritten note indicates only that when discussing minority faculty recruiting, Chancellor Weiss said "to recruit minorities, we very well may need to help them through the process."[85] Chancellor Weiss did not at any time indicate that minority candidates are less qualified or should be held to a lower evaluative standard. Rather, he was recounting the AALS panel discussion and specifically referring to candidates recruited outside of the "official" AALS process:

A: ...And let me just be perfectly clear about this. Never, never at that meeting or at any other time have I ever stated anything to the effect that minority candidates are less qualified than other candidates. Nor have I ever stated, then or at any other time, that minority candidates should be held to a lesser standard of evaluation than other candidates. Nor have I ever remotely stated that minority candidates are, quote, less well-educated than other candidates. And I am very, very sure that I've never said anything like that.[86]

Chancellor Weiss' account of the meeting is definite, specific and uncontradicted by any evidence in the record. Plaintiff has provided absolutely no basis in fact to support her version of the alleged statement made at a meeting which she did not even attend.[87]

Even if Chancellor Weiss had spoken the demeaning words attributed to him by Plaintiff or implemented an alleged lesser evaluative standard for minorities, both of which are categorically denied, Plaintiff still cannot meet the prima facie elements of a hostile work environment claim as a matter of law because she cannot establish proof of any negative effect on her. *See e.g. Frank v.*

---

[85]Goring Depo., Ex. 32. The author of the handwritten note is unknown and, as such, its author has never testified to its accuracy or completeness.

[86]Weiss Depo., Pg. 93, Ln. 17-Pg. 94, Ln. 2.

[87]It is wholly implausible that the faculty would have remained silent in the face of a statement like that attributed to Chancellor Weiss by Plaintiff or that faculty members would be unable to recall and confirm such a statement with great exactitude had it in fact been made. Thus Plaintiff's inability to provide any testimonial support for the alleged statements demonstrates the utter falsity of Plaintiff's allegations and the appropriateness of summary judgment.

*Xerox Corp.*, 347 F.3d 130, 138 (5th Cir.2003)[88] Plaintiff's unfounded and spurious allegations should be dismissed.

## 7.  Disparate Pay

Plaintiff's Title VII claim relating to disparate pay should be dismissed because she cannot establish the prima facie case of discriminatory compensation: (1) that she is a member of a protected class and (2) that she is paid less than a nonmember for work requiring substantially the same responsibility. *See Williams v. Galveston Indep. Sch. Dist.,* 78 F. App'x 946, 949 (5th Cir.2003). Plaintiff has failed to name even one alleged comparator whose circumstances are "nearly identical" to hers and cannot point to a single piece of evidence in the record to establish that she is being paid in a "disparate fashion relative to her white male comparators."[89] *See Little v. Republic Refining Co.,* 924 F.2d 93, 97 (5th Cir.1991) As such, Plaintiff cannot meet the prima facie elements of this claim. *See Little, supra* (to establish a claim of disparate treatment, a plaintiff must show she was treated differently under "nearly identical" circumstances); *see also Dotson v. City of San Antonio,* 177 F. App'x 437, 440 (5th Cir.2006) (affirming summary judgment where the evidence did not raise a genuine question as to whether plaintiff and comparator had "nearly identical jobs"); *Runnels v. Tex. Children's Hosp. Select Plan,* 167 F. App'x 377, 385 (5th Cir.2006).

The legal standard for pay claims within the Fifth Circuit is "steep," and Plaintiff must meet it with competent record evidence. *Moffett v. Mississippi Dept. of Mental Health,* 2009 WL 1770121 (S.D. Miss. 2009). The Fifth Circuit has "consistently held that an employee's subjective belief of

---

[88]*See Frank v. Xerox Corp.*, 347 F.3d 130, 138(5th Cir. 2003)(wherein the Fifth Circuit found that a workforce initiative insuring proportionate placement of employees of different races did not create a hostile work environment).

[89]Supplementing and Amending Petition, ¶ 16a.

26

discrimination alone is not sufficient to warrant judicial relief." *Bauer v. Albemarle Corp.,* 169 F.3d 962, 967 (5th Cir.1999). As such, Plaintiff's claims relating to disparate pay should be dismissed.

## 8. Retaliation and/or Reprisal Claims Should be Dismissed

Finally, Plaintiff alleges that "defendant LSU's conduct as set forth herein" constitutes unlawful retaliation under Title VII and also "illegal reprisal within the meaning and intent of La. R.S. 23:967."[90] Plaintiff's vague and conclusory allegations of both retaliation under Title VIII and reprisal under La. R.S. 23:967 lack any factual support and must be dismissed.

The elements of a claim of retaliation, under 42 U.S.C. § 2000e-3(a) are set forth in Section C(4), *supra*.[91] An employee "has engaged in activity protected by Title VII" if she has either (1) opposed any practice made an unlawful employment practice by Title VII or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII. *McKinney v. Bolivar, Medical Center*, 2009 WL 2474065 (5th Cir 2009). Plaintiff did not file her charge with the LCHR until February 6, 2008. Accordingly, summary judgment is appropriate on a claim of any alleged retaliatory acts prior to February 6, 2008[92] because until that time Plaintiff had not engaged in a protected activity.

With regard to any claim of retaliation under Title VII after February 6, 2008, among other glaring deficiencies, Plaintiff cannot establish that she suffered an adverse employment action. For an action to be considered an "adverse employment action" in a prima facie case for retaliation,

---

[90]Petition, ¶ 18.

[91]The evidentiary framework established in *McDonnell Douglas* applies to retaliation claims that depend upon circumstantial evidence. *Dumas v. Union Pacific Railroad Co.*, 294 Fed. Appx. 822 (5th Cir. 2008).

[92] Accordingly, any claim that Plaintiff was retaliated against when she was purportedly removed from her position as the coach of the BLSA Mock Trial Team in 2007 in the face of the undisputed student rebellion against her should be dismissed summarily because she had not engaged in a protected activity at that point.

27

Plaintiff must show that a reasonable employee would have found the action materially adverse, meaning "it might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Rochon v. Gonzalez,* 438 F.3d 1211, 1219 (D.C. Cir. 2006). This definition does not include "petty slights or minor annoyances that often take place at work and that all employees experience." *See Burlington Northern v. White,* 548 U.S. 53, 68 (2006). The "acts" alleged by Plaintiff in her Petition (even if true) would not dissuade a reasonable employee from making an allegation of discrimination.[93]

Grasping for straws, in an effort to show *some* adverse action, Plaintiff alleges that Chancellor Weiss sent a letter containing a "direct criticism" of her to the LSU System in connection with her application for promotion to full professor.[94] Plaintiff grossly mischaracterizes Chancellor Weiss' letter, the text of which speaks for itself. In the letter, Chancellor Weiss acknowledged Plaintiff's total lack of published scholarship in the years since she received tenure but nevertheless <u>recommended</u> Plaintiff's promotion.[95] However, even if the Chancellor Weiss' letter was adverse to Plaintiff, which is belied by both the letter itself and the fact of Plaintiff's promotion based upon the letter, the letter cannot serve as a basis for a retaliation claim. In *Rico Sanz v. State of Louisiana,* 2006 WL 3147730 (M.D. La. 2006), the plaintiff claimed that a

---

[93]*See, e.g., Mitchell v. Snow,* 326 Fed. Appx. 852 (5th Cir.2009) (upholding the District Court's holding that an unexpected low employment review would not have dissuaded a reasonable employee from asserting a claim); *Browning v. Southwest Research Inst.,* 288 Fed. Appx. 170 (5th Cir.2008) ( a "heated exchange of words in a work place confrontation" did not constitute retaliation, and amounted to the 'petty slights' or 'minor annoyances' that all employees face from time to time).

[94]Supplemental and Amending Petition, ¶16(4).

[95] Goring Depo., Ex. 20.

supervisor's threat to issue a negative reference letter about the plaintiff was a retaliatory action.[96] This Court held that the plaintiff did not show how a negative reference was linked to his filing an EEOC charge or that it would be based on any unlawful animus. This Court held that an employer is "entitled to give references that reflect the nature of an employee's performance". *Id.* Chancellor Weiss did just that, accurately noting Plaintiff's lack of post tenure scholarship. In any event, it is undisputed that Plaintiff ultimately received the promotion. As such, she cannot show how that the Chancellor's so-called "negative" letter resulted in any "adverse employment action" or that the letter was linked to any unlawful animus. The letter did no more than truthfully impart undisputed information about the Plaintiff's circumstances and performance.

Likewise, Plaintiff has no "reprisal" claim under La. R.S. 23:967.[97] To survive summary judgment Plaintiff must establish that (1) Defendant violated state law; (2) she advised Defendant of the violation; (3) she refused to participate in the prohibited practice or threatened to disclose it; and (4) she suffered a reprisal as a result of her refusal or threat. *Ganheart v. Xavier University of Louisiana*, 2009 WL 24227 (E.D. La. 2009). Plaintiff cannot demonstrate a genuine issue of material fact as to **any** of the elements of a claim of reprisal under La. R.S. 23:967. The statute requires an employee to prove an actual violation of state law in order to prevail on the merits of the case. There is nothing in the record that indicates that Defendant violated a state law or that Plaintiff suffered a reprisal because of her refusal to participate or her threat to disclose such practice. As

---

[96]An email from the superior stated, "...he needs to realize that if he gets a letter of recommendation from any of us, he is unlikely to get the position he is applying for as those letters will have to reflect the reality of our relations with him." *Id.* at 11.

[97]Louisiana courts look to federal Title VII jurisprudence to interpret Louisiana discrimination laws and therefore the federal analysis applicable to plaintiff's Title VII claim also governs plaintiff's state law claims under La. R.S. 23:967. *Stevenson v. Williamson*, 547 F.Supp.2d 544, 551 (M.D. La. 2008).

Case 3:08-cv-00634-JJB-SCR   Document 45-5   01/13/10   Page 29 of 30

such, her claim under La. R.S. 23:967 should be dismissed and Defendant should be awarded attorney's fees under La. R.S. 23:967(D).[98]

## III. Conclusion

The Fifth Circuit requires a plaintiff to come forward with more than conclusory allegations and unsubstantiated assertions to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337,345 (5th Cir. 2007). Plaintiff cannot meet her burden under Fed.R.Civ.P. 56(c) and as such, Defendant is entitled to summary judgment as to all of Plaintiff's claims.

By Attorneys,
KANTROW, SPAHT, WEAVER & BLITZER (APLC)
P. O. Box 2997
Baton Rouge, Louisiana 70821-2997
Telephone: (225) 383-4703

By:  /s/ Richard F. Zimmerman, Jr.
　　　Richard F. Zimmerman, Jr. (#13800)
　　　Randal J. Robert (#21840)
　　　Jennifer A. Hataway (#26323)
Attorneys for LSU Board of Supervisors

## CERTIFICATE

I hereby certify that a copy of the above and foregoing has been served by PACER notice this 13th day of January, 2010.

　　　　　　　　　　/s/ Richard F. Zimmerman, Jr.

---

[98] La. R.S. 23:967(D) provides that if a suit or complaint is brought in bad faith or if it should be determined by a court that the employer's act or practice was not in violation of the law, the employer may be entitled to reasonable attorney fees and court costs from the employee.

30