UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

DARLENE C. GORING

CIVIL ACTION

VERSUS

NO. 08-634-JJB-SCR

BOARD OF SUPERVISORS OF LOUISIANA
STATE UNIVERSITY AND AGRICULTURAL
AND MECHANICAL COLLEGE

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a motion for summary judgment by the defendant, Board of Supervisors of Louisiana State University and Agricultural and Mechanical College ("the Board"). (Doc. 45.)  Plaintiff, Darlene C. Goring, filed an opposition. (Doc. 57.)  Defendant filed a reply. (Doc. 60.)  This Court's jurisdiction exists pursuant to 28 U.S.C. § 1331.  Oral argument is not necessary. For the following reasons, the Court GRANTS defendant's motion for summary judgment on all of plaintiff's claims.

**Background**

The facts giving rise to this lawsuit are somewhat complex and span over seven years.  The lawsuit concerns events that occurred during Darlene Goring's employment as a professor at the Paul M. Hebert Law Center at Louisiana State University ("LSU Law Center"), in Baton Rouge, Louisiana.  The Board oversees

the LSU Law Center.[1]  In August 2002, Goring joined the Law Center faculty as an Associate Professor of Law on a tenure track.  Goring initiated the process for tenure and promotion in 2005; however, she ultimately sought only tenure. Goring alleges that other professors convinced her not to seek tenure and promotion simultaneously because it would be inconsistent with Law Center tenure and promotion policy.  The Board maintains that the decision to pursue only tenure was Goring's alone.  Regardless, Goring acquired indefinite tenure by unanimous vote on November 9, 2005, but she was not promoted to the rank of full professor.

In January 2007, Goring had an altercation with the president of the Black Law Student Association ("BLSA"), Daphne LaSalle, also an African-American woman.  The parties dispute the basis and nature of this altercation.  Goring alleges that she received complaints concerning the inappropriateness of LaSalle's dress at a BLSA event in Miami and that she voiced those concerns to Vice Chancellor Cheney Joseph ("VC Joseph").  Goring alleges that VC Joseph insisted that Goring speak to LaSalle about the problems concerning her dress. Goring alleges that she was reluctant about doing so because she was not the advisor for this group, but that she nevertheless agreed.   The resulting

---

[1] The Board of Supervisors of Louisiana State University and Agricultural and Mechanical College is established by Article 8, Section 7 of the Louisiana Constitution. The Board is a constitutionally empowered entity granted the authority and responsibility to "supervise and manage the institutions, statewide agricultural programs, and other programs administered through its system."  Board of Supervisors – Louisiana State University System, http://www.lsusystem.edu/boardofsupervisors/ (last visited Apr. 13, 2010).

confrontation turned acrimonious with both Goring and LaSalle allegedly hurling invectives and accusations at each other.

Repercussions from this altercation continued into May 2007 when Goring and LaSalle's mother got into a heated verbal exchange at the Law Center's graduation ceremony.  LaSalle's mother briefly confronted Goring concerning her displeasure with Goring's conduct, specifically some of the words Goring allegedly used to describe her daughter's wardrobe.[2]  Goring alleges that LaSalle posted photographs and derogatory comments concerning the confrontation on her Facebook page.  The parties dispute what happened once Goring reported the photographs.  LSU alleges that LaSalle removed both the photographs and references to the altercation on her Facebook page when VC Joseph asked her to do so.  Goring counters that LaSalle continued to make postings on her page. Goring alleges that she again reported the matter to VC Joseph and Law Center library staff, to inform them that LaSalle used the Law Center's computer for the web postings in violation of the usage policy, but that no action was taken against LaSalle.

In the Fall of 2007, Goring ceased coaching the BLSA mock trial team. Goring alleges Chancellor Weiss removed her from the coaching position.  The Board counters that Goring voluntarily left after BLSA members adamantly objected to her continued involvement.

---

[2] The Board alleges Goring said that LaSalle looked like a "slut" and a "whore."  Goring denies using those words.

Goring requested promotion on November 12, 2007.  The Board argues that the LSU Law Center's official rules for tenure, promotion and review established September 15 as the application deadline.  Goring counters that another set of rules, the LSU A&M rules,[3] allowed her to apply for promotion at any time.  Goring alleges that she verbally expressed her interest in applying to Professor Kenneth Murchison, another member of the Law Center faculty and Chairman of the Promotion and Tenure Committee, prior to September 15, but that Murchison told her that the committee would require two additional articles and it would be futile to apply for promotion at that time.  The Board argues that Goring made an untimely promotion request because she submitted her materials after the deadline passed.  Consequently, at a November 14, 2007 meeting, without addressing the merits of the application, the faculty refused to consider the request for promotion.  Ms. Goring filed a charge of discrimination with the Louisiana Commission on Human Rights ("LCHR") on February 6, 2008.

At a faculty meeting on April 16, 2008, Chancellor Weiss proposed to hire a former president of the Louisiana State Bar Association, Phelps Gay, to oversee the continuing legal education program at LSU without posting or advertising the position.  A majority of the faculty opposed Weiss's proposal and the meeting quickly became contentious.  Weiss ultimately did not pursue the hire.  Goring alleges that after she voiced concerns during the meeting that

---

[3] The record is not clear where these rules are posted or to whom they apply.  However, it appears that the LSU A&M rules are another set of guidelines governing tenure and promotion that existed at the time Goring sought promotion.

Weiss's proposed action might violate EEOC policies, Weiss raised his voice, and became rude, hostile, and nasty.  Goring also alleges that Chancellor Weiss made reference to the instant litigation in his comments.[4]  LSU counters that Chancellor Weiss did not raise his voice, use profanity or any racially offensive terms.

In Fall 2008, Goring filed this lawsuit against the Board alleging discrimination, hostile work environment and retaliation.  Around the same time, Goring timely sought consideration for promotion to full professorship.  Goring alleges that after the filing of this lawsuit, but before the faculty vote on her promotion, Chancellor Weiss sent a two-page letter to the faculty, casting her application in a negative light. The Board counters that Weiss's letter concludes with a recommendation in favor of Goring's promotion.  The faculty approved the promotion.  The Board subsequently promoted Goring to full professor in July 2009, a position which she still holds.

### Summary Judgment Standard

Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When the burden at trial rests on the non-movant, as it does here, the movant need only

---

[4] Presumably, Weiss's comments referenced Goring's LCHR grievance because the LCHR grievance is the only official complaint filed at the time of the Phelps Gay meeting.

demonstrate that the record lacks sufficient evidentiary support for the non-movant's case.  *Id.*   The movant may do this by showing that the evidence is insufficient to prove the existence of one or more elements essential to the non-movant's case.  *Id.*

This Court considers the evidence in the light most favorable to the non-movant, but the non-movant may not merely rest on allegations set forth in the pleadings.  Instead, the non-movant must show that there is a genuine issue for trial.   *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  Conclusory allegations and unsubstantiated assertions will not satisfy the non-movant's burden.  If, once the non-movant has been given the opportunity to raise a genuine factual issue, no reasonable juror could find for the non-movant, summary judgment will be granted.  *See Celotex Corp.*, 477 U.S. at 322; *see also* Fed. Rule Civ. P. 56(c).

## **Law and Analysis**

As an initial matter, the Court notes the lack of clarity and organization that pervades Goring's submissions.  This scattershot approach of aggregating facts, then summarily attaching causes of action hampers the Court's ability to identify the specific claims at issue and efficiently address the current motion.

Claims Prior to April 2007

First, the Court must determine which prescriptive period governs Goring claims.  Goring alleges that her retaliation, harassment, and discrimination claims are subject to a four year statute of limitations. Goring argues that 28 U.S.C. §

6

1658 establishes a four year statute of limitation because her claims are brought under 42 U.S.C. § 1981.  *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 383 (establishing the four year prescriptive period for all claims arising from post-1990 Acts of Congress, including § 1981).  The Board counters that § 1981 does not apply because LSU is a state actor, and therefore Title VII's 300-day prescriptive period governs.  The Court agrees with the Board.

Goring's argument fails because § 1981 does not provide a proper jurisdictional basis for Goring's discrimination claims.  Although § 1981 provides protection against impairment of civil rights, the Fifth Circuit has limited its applicability to claims against private actors.  *See Oden v. Oktibbeha County, Miss.*, 246 F.3d 458, 463 (5th Cir. 2001) (holding that § 1981 creates a cause of action against private actors, but "[§] 1983 remains the only provision to expressly create a remedy against persons acting under color of state law").  Thus, § 1983 is the only remedy for civil rights violations alleged against government actors.  *Id.*  Here, the Board, as the governing body of a state university, is a state actor.  *See Brennan v. Bd. of Trustees for Univ. of La. Sys.*, 95-2396 (La. App. 1 Cir. 3/27/97); 691 So. 2d 324, 329 (finding the University of Southwestern Louisiana's Board of Trustees to be "unquestionably" a state actor).  None of Goring's pleadings raise claims under § 1983.  Consequently, in the absence of a proper claim under § 1983 or § 1981, Goring's only valid claims

are under Title VII.[5]  It is undisputed that Goring filed her charge of discrimination with the Louisiana Commission on Human Rights ("LCHR") on February 6, 2008. Under Title VII, any allegedly discriminatory act occurring outside of 300 days from the date Goring filed her LCHR charge is barred.[6]  Accordingly, all claims based on acts occurring before April 12, 2007, are prescribed, and summary judgment in the Board's favor is proper.

Claims Relating to Failure to Promote to Full Professorship in 2007

Goring alleges that the Board's refusal to consider her request for promotion on November 14, 2007 constituted discrimination under Title VII.  The parties correctly point out that Goring's employment discrimination claims are analyzed under the three-step, burden shifting paradigm first outlined in *McDonnell Douglas Corp. v. Green*.  411 U.S. 792 (1981); *see also Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 680 (5th Cir. 2001).  First, Goring must raise a genuine issue of material fact as to each element of her prima facie case. *See Medina*, 238 F.3d at 680. Then, the Board must articulate a legitimate, nondiscriminatory reason for its employment decision.  *See id.*  Finally, the employee must raise a genuine issue of material fact as to whether the employer's proffered reason was merely a pretext for discrimination.  *See id.*

---

[5] Goring's claims under Title IX are addressed in the "Retaliation" section of this ruling.
[6] In *National Railroad Passenger Corp. v. Morgan*, the Supreme Court differentiated between discrete discriminatory acts and continuing violations.  *See* 536 U.S. 101, 114-15, 116-17 (allowing that "some of the component acts of the [Title VII claim] fall outside the statutory time period.  Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.")  To the extent that Goring's timely Title VII claims, addressed in a separate section of this ruling, include acts outside the prescription period, those acts will be addressed in light of this continuing violation theory.

Additionally, in *Desert Palace, Inc. v. Costa*, the Fifth Circuit adopted a modified *McDonnell Douglas* approach in cases where circumstantial evidence provides the basis for the discrimination claim.  539 U.S. 90, 101-02 (2003) (labeling the modification a "mixed-motives" approach).  Under the mixed-motives approach, the prextual analysis broadens by allowing the fact finder to consider circumstantial evidence of discrimination, in that Goring may present evidence that the Board's reason is only one of the reasons for its conduct, but that Goring's protected characteristic is another motivating factor.  *See Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).   If Goring succeeds, the burden shifts back to the Board to prove it would have taken the same action in the absence of discriminatory animus.  *Id.*

Here, Goring establishes her prima facie case, and the LSU Board counters with a legitimate, nondiscriminatory reason for failing to promote Goring. However, Goring fails to show either that the Board's reason was pretextual or that Goring's race was a motivating factor in the Board's decision making process.

To meet the prima facie case for failure to promote discrimination, Goring must show that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) others similarly situated but outside the protected class were treated more favorably.  It is undisputed that Goring is a member of a protected class as an African-American.  It is likewise undisputed that she suffered an adverse employment

9

action because she was denied promotion to full professorship. *See* 42 U.S.C. § 2000e-2(a)(1) (prohibiting discrimination "with respect to . . . compensation, terms, conditions, or privileges of employment"); *Rico-Sanz v. State of La. & Pennington Biomedical*, 2006 WL 3147730, at *7 (M.D. La. Oct. 23, 2006) (affirming that a failure to promote is an adverse employment action because it effects a "material change in the terms or conditions of employment") (internal citation omitted). However, the Board argues that Goring cannot show she was qualified for the position at the time she applied or that similarly situated persons outside the protected class received more favorable treatment.[7]

The Board argues that Goring was not qualified for the position because she filed her request for promotion nearly two months after the September 15 deadline. Goring counters that she verbally expressed to Professor Murchison, another member of the Law Center faculty and Chairman of the Promotion and Tenure Committee, her interest in applying prior to the deadline. Goring states that Murchison told her not to apply at that time and that she heeded that advice. Goring also avers that other tenure and promotion ("T&P") regulations, the LSU A&M rules, apply to her as well. These LSU A&M rules allegedly allow T&P candidates to file their applications at any time. Thus, taking all inferences in favor of Goring, the Court finds that her discussion with Murchison coupled with

---

[7] The Board also argues that Goring's claims relating to her 2007 application for full professorship should be dismissed because she was ultimately granted both tenure and a full professorship, and therefore suffered no damage as a result of the alleged discrimination. However, the Board overstates the consequence of Goring's ultimate promotion. Although Goring's eventual promotion may lessen damages, it does not alleviate the allegation of past discriminatory harm  prior to her promotion.

the possible existence of a parallel set of application regulations create a genuine factual dispute regarding whether her untimely application merits qualification.

As for the fourth prong, Goring alleges that another professor, Alberto Zuppi, was given an extension to submit his application packet to the T&P committee.  The alleged Zuppi extension enables Goring to show that a factual issue exists regarding whether similarly situated persons were treated differently. Therefore, Goring successfully makes her Title VII prima facie case.

The Board counters that its actions are supported by a legitimate, non-discriminatory reason because the untimely application precludes "orderly consideration of her request for promotion."  In support, the Board cites the Law Center's T&P rules, expressly establishing the September 15 deadline.  Goring argues that the two months between filing of her application and the January 2008 faculty meeting at which her application would be voted on provided ample time for consideration.  This argument, however, is unavailing.  Whether two months minus holiday periods is adequate time for consideration, and the Court notes ample evidence submitted by the Board that the time is not adequate,[8] does not impugn the legitimacy of the Board's adherence to written policy. Consequently, the Court finds that the Board has met its burden and the focus now shifts to Goring to show that this reason is pretextual.

---

[8] *See, e.g.,* Reply Mem. in Supp. of Mot. for Summ. J. 10-11 (60-1) (listing, among other difficulties, the need to schedule classroom visitations and outside review of the applicant's scholarly publications).

Goring argues that the irregularities, inconsistencies and use of subjective criteria in the T&P process support the notion that her race was a motivating factor in the Board's refusal to show leniency regarding the application deadline. To that effect, Goring argues that the Board did not consider its T&P rules to be rigid and inflexible. She contends that the Board applied the rules with some discretion making exceptions at times.[9]   Goring's allegations provide some evidence that the T&P timelines are not as rigid as the Board argues. However, Goring's two references to deviations from the normal T&P procedures provide tenuous support for her allegation that the Board's proffered reason for not considering her late application was pretext and the product of a discriminatory intent to single her out.

In Goring's first example, Professor Malinowski points to only one exception to the T&P rules – for Chancellor Weiss.[10]   But this exception dealt with waiver of publication requirements for a chancellorship candidate, not application deadlines for a professorship candidate.   In Goring's second example, Professor Murchison points to relaxation of the timelines surrounding delivery of the T&P committee report to the full faculty.[11]   However, T&P committee compilation of a report is not the same as faculty review of that report. The two activities differ in the amount of time needed for committee members to

---

[9] Mem. in Opp'n to Mot. For Summ. J. 28 (doc. 57) (citing the Murchison and Malinowski depositions).
[10] Malinowski Dep. 204 (doc. 53-4).
[11] Murchison Dep. 70, 72 (doc. 53-4).

compile, organize, and create the candidate's file as compared to time spent by faculty reviewing the final document.[12]

Moreover, and most importantly, Goring does not show that the Board's decision to reject her late application submission in any way reflects discriminatory animus.  Nor does she point to anything, beyond her subjective perceptions, that ties denial of her untimely application to race.  "[A] subjective belief of discrimination, however genuine, [may not] be the basis of judicial relief." *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 313 (5th Cir. 1999) (internal quotation omitted).  Thus, even under a mixed-motives analysis, Goring fails to rebut the Board's proffered explanation for denying her untimely application.  Consequently, summary judgment for the Board on Goring's claims relating to failure to promote to full professorship in 2007 is proper.

Disparate Pay Claims

To establish a prima facie case for a disparate pay claim, Goring must show: "(1) that she is a member of a protected class, and (2) that she is paid less than a nonmember for work requiring substantially the same responsibility." *Uviedo v. Steves Sash & Door Co.*, 738 F.2d 1425, 1431 (5th Cir. 1984).  The Fifth Circuit established that "an individual plaintiff claiming disparate treatment in pay under Title VII must show that his circumstances are 'nearly identical' to those of a better-paid employee who is not a member of the protected class."

---

[12] See Promotion, Tenure, and Review § 5(D)(2) (doc. 45-2 at 20) (describing data compilation as part of the review committee's duties); Murchison Dep. 101-03 (describing classroom visits as part of the review committee's duties); Reply Mem. in Supp. of Mot. for Summ. J. 11 (doc. 60-1) (describing scheduling of outside review of the candidate's scholarly articles as part of the review committee's duties).

*See Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008) (internal citation omitted).   Moreover, the job contents, not the job title classification or description, determine whether the circumstances are nearly identical. *Montgomery v. Clayton Homes, Inc.*, 65 F. App'x 508, *2 (5th Cir. 2003) (internal citation omitted).   This legal standard is exacting and demands competent record evidence to substantiate allegations of discriminatory pay. *See Moffett v. Miss. Dept. of Mental Health,* No. 07-517, 2009 WL 1770121, at *4 (S.D. Miss. June 23, 2009).

The first element is not in dispute.   Regarding the second element, Goring alleges that she received no merit pay increase for 2009, that she received no additional compensation for teaching the legal methods course, and that she received $5,000 as director of the Leo S. Butler Legal Clinic, whereas a white male professor received $50,000 as director of the not-yet-opened Health Care Program.   The Board counters that none of these facts meet the exacting standards required for the second prong.  The Court agrees with the Board.

The Board avers, through the affidavit of its director of Human Resources, that no professor received a merit pay increase in 2009; that Goring and Professor Joseph Bockrath, a white male, received identical pay for teaching the same summer legal methods course; and neither professor received any additional pay for their continuing work with legal methods students during the school year.   These facts conclusively show that Goring was not paid less than other similarly situated professors.  Finally, Goring fails to provide any competent

14

record evidence beyond her own conclusory allegations that her service as director of the Butler Clinic occurred under nearly identical circumstances or entailed nearly identical job responsibilities and duties as the director of the Health Care Program.  Therefore, because Goring fails to raise a genuine issue of material fact regarding the second prong of the prima facie case, the Board is entitled to summary judgment on Goring's disparate pay claim.

Claims Related to Goring's Involvement with the BLSA

Goring does not clearly lay out the claims she brings regarding her dealings with the Black Law Students Association ("BLSA").  It appears that she alleges elements related to disparate treatment and hostile work environment claims.

To establish a prima facie case of disparate treatment, Goring must show that: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) that others similarly situated were treated more favorably."  *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.,* 245 F.3d 507, 512-13 (5th Cir. 2001).  The first element is undisputed.  While the parties present arguments on the remaining elements, the Court need only address Goring's inability to raise a genuine issue of fact regarding the final element to show that summary judgment for the Board is proper on this claim.

At bottom, Goring is unable to show that the Board treated similarly situated faculty members more favorably in a nearly identical situation.  Goring

offers no evidence that any law school faculty members received preferential treatment when confronting problems arising from dealings with student-run organizations. *See Bryant v. Compass Group USA Inc.*, 413 F.3d 471, 478-79 (5th Cir. 2005) (vacating a judgment in favor of plaintiff where no reasonable fact finder could conclude that the "nearly identical" standard had been met). Therefore, because Goring is unable to make the prima facie case for disparate treatment, summary judgment for the Board is proper.

To establish the elements of a hostile work environment claim, Goring must show that:

> (1) she belongs to a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment, and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action.

*Green v. Adm'rs of the Tulane Educ. Fund*, 284 F.3d 642, 655 (5th Cir. 2002). Similar to the disparate treatment claim, Goring's hostile work environment claim suffers a fatal deficiency on one of the elements. Goring does not offer any evidence that any alleged unwelcome, harassing behavior, initiated either by the students or by any employee or official at the LSU Law Center, was based on her race. The students involved in the alleged altercations were all African-American, as is Goring. Moreover, viewing the facts in the light most favorable to Goring, if LSU Law Center employees or officials failed to promptly and adequately address Goring's concerns over student web postings, nothing in the record indicates that this had anything to do with Goring's race. As discussed

16

above, Goring's subjective belief of discrimination is insufficient to sustain a Title VII claim.  *Lawrence*, 163 F.3d at 313.  Therefore, summary judgment on any hostile work environment claim is proper.[13]

Hostile Work Environment Claim Based on Interaction with Chancellor Weiss

Goring alleges that Chancellor Weiss engaged in continuous conduct that discriminated against her by creating a race based hostile work environment in violation of Title VII.  The elements of a hostile work environment claim are stated above.  Specifically, Goring alleges that Chancellor Weiss "raised his voice to [Goring], was rude, hostile, and nasty" at a faculty meeting concerning the Phelps Gay hiring, removed Goring from her position as BLSA moot court team coach, requested additional external reviews accompanying her promotion application, and changed other review procedures during her performance evaluations.[14]

Defendant counters by disputing Goring's characterization of the Phelps Gay meeting, by categorizing her disagreement with the BLSA as an interpersonal conflict between Goring and the students, and denying that any perceived change in review procedures had anything to do with race.  Taking all factual allegations as true and making all inferences in favor of Goring, the Court finds that Goring fails to raise genuine issues of fact on each element of the prima facie case for a hostile work environment claim, and therefore summary judgment is proper.

---

[13] To the extent that Goring brings a retaliation claim based on Chancellor Weiss's alleged removal of her as the coach of the BLSA moot court team that claim is addressed below in the "Retaliation" section.

[14] Mem. in Opp'n to Mot. For Summ. J. 31-32.  (Doc. 57.)

Goring is part of a protected class.  She further alleges that Weiss's actions at the Phelps Gay meeting and in the wake of the BLSA incidents evince unwelcome harassment, and that Weiss's reference to the instant litigation during the Phelps Gay meeting implicates race.  The Board disputes those allegations and additionally contends that Goring cannot show that the alleged harassment affected a term, condition, or privilege of her employment.  *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 764-65 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 809-10 (1998) (establishing vicarious liability as a valid theory under Title VII thus obviating the need to discuss the final element).

To alter the terms or conditions of employment, the conduct must be sufficiently severe or pervasive when viewed in light of factors such as the frequency of the conduct, the degree to which the conduct is humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance.  *Septimus v. Univ. of Houston*, 399 F.3d 601, 611 (5th Cir. 2005). Goring's submissions track the events of the meeting from two perspectives, Goring's own and Professor Malinowski's.[15]   After careful review of the cited deposition testimony, the Court finds nothing in the record indicating that race factored into Chancellor Weiss's actions.[16]   Neither Goring nor Malinowski explains exactly what Weiss said, but both admit that none of Weiss's comments

---

[15] *Id.* at 31.

[16] Goring describes Weiss's comments as "dismissive" and "disrespectful," and names other professors who echoed those sentiments in conversations with her, but she states that Weiss did not use words that she found racially offensive.  Goring Depo. 369, 373.  Malinowski recalls that Weiss was "rude", but cannot remember his exact words.  Malinowski Depo. 108-111.

had a racial component.  Furthermore, nothing in the record supports finding that the isolated instance reached the level of severity needed to survive summary judgment.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998) (holding that Title VII is not a general civility code).  Therefore, because Goring has not shown that a genuine issue of material fact exists for each element of a Title VII hostile work environment claim, summary judgment in the Board's favor is proper.

Retaliation Claims under Title VII, La, Rev. St. 23:967, and Title IX

Goring alleges that she was unlawfully retaliated against under Title VII, Title IX, and Louisiana Revised Statute 23:967.  Goring alleges that the retaliatory actions include removal as coach from the BLSA team, the aforementioned comments by Chancellor Weiss at the Phelps Gay meeting, requiring additional procedures pursuant to Goring's 2007 promotion request and her annual reviews,[17] and including criticism of her in a letter recommending her for promotion.  The Board vigorously disputes Goring's version of the above events.

Title VII retaliation cases involving circumstantial evidence are subject to the same modified *McDonnell Douglas* burden-shifting scheme described in the discrimination section above.  *See Smith v. Xerox Corp.*, No. 08-1115, slip op. at 16-17 (5th Cir. Mar. 24, 2010).  Restated, that scheme involves Goring showing a

---

[17] Including requesting external reviews and classroom visitations, and requiring VC Joseph's presence in the room during an annual review.

genuine issue of material fact on all elements of the prima facie case, the Board then offering a legitimate, non-discriminatory reason for those actions, and the burden then shifting to Goring to show that the Board's proffered explanation is pretext or that race was a motivating factor for the action.  To establish Title VII retaliation, Goring must show that: (1) she engaged in a protected activity, (2) she suffered from an adverse employment action, and (3) a causal link existed between the activity and the adverse employment action.  *Septimus*, 399 F.3d at 610.

Goring argues that the record contains ample evidence of protected activity and causation.[18]  She contends that her protected activities include protests to VC Joseph about references to her as a token African-American, complaints to Chancellor Weiss of a hostile work environment, as well as the February 6, 2008, filing of her LCHR charge and August 2008 filing of this lawsuit. Goring alleges that retaliatory actions against her include Weiss's comments during the Phelps Gay meeting, a dispute over Goring's request for accommodation regarding her teaching schedule, removal as BLSA coach, Weiss's two page letter regarding Goring's promotion application, as well as post-promotion alleged retaliatory actions, including Weiss's inclusion of VC Joseph in several meetings with Goring.[19]

---

[18] Mem. in Opp'n to Mot. For Summ. J. 35.  (Doc. 57.)
[19] *Id.* at 36-37.

The Board counters that all allegations of retaliatory acts prior to the February 6, 2008, LCHR complaint are prescribed because until that time Goring had not engaged in a protected activity. The Board also alleges that Goring cannot establish that she suffered an adverse employment action or that any causal link exists between the adverse action and the protected activity. There is no need to address the Board's prescription argument, because the Court finds that even if all Goring's claims survive prescription, no causal connection exists between an adverse employment action and a protected activity.

As addressed above, nothing in the record supports the notion that any of Weiss's comments during the Phelps Gay meeting had anything to do with race. Even if the meeting turned "rude, hostile, and nasty,"[20] and even if Weiss referenced this litigation in response to Goring's questions about his Law Center faculty hiring policies, the Court is not aware of any tie, between either the language used in that meeting or the tenor of the meeting itself, to Goring's race.

Similarly, Goring's claim that her removal as BLSA coach constituted retaliation fails because she cannot show that the removal was based on her engaging in a protected activity. Goring alleges that Weiss removed her after she complained of harassment at the hands of BLSA members and that BLSA members may have violated school rules. The Board disputes labeling Goring's split with the BLSA a removal, alleging instead that she voluntarily withdrew from the team. The Board further argues that even if Goring was removed as coach

---

[20] *Id.* at 31.

the action was justified because she was no longer qualified to coach the team because of her inability to work with the students.  Goring provides no evidence of pretext, and nothing appears in the record to support a link between Goring's engagement in a protected activity and any retaliatory action against her. Accordingly, the Court will not speculate on the connection.  *See* Septimus, 399 F.3d at 611 (refusing to find retaliation where only a speculative connection exists between a protected activity and an allegedly retaliatory action).

Goring's allegations that Chancellor Weiss's denial of her request for teaching schedule accommodations and Weiss's two page letter fail because these events were not adverse employment actions.  The Fifth Circuit takes a narrow view of adverse employment actions, requiring that they rise above the level of "relatively trivial" incidents and involve more than decisions involving teaching assignments and administrative matters.  *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000) (internal citations omitted).  Goring may argue that Weiss's letter constituted something less than a ringing endorsement of her qualifications for promotion and as such negatively impacted her chances for promotion; however, this argument belies the fact that Weiss's letter recommended, and Goring did in fact subsequently receive, promotion. Moreover, regarding Goring's requests for teaching schedule accommodations, the Court finds nothing in the record elevating this administrative concern to the level of an adverse action.  *See id.*  Therefore, these events are deficient grounds for a retaliation claim.

Finally, Goring's allegation that her post-promotion annual reviews have been marred by retaliatory actions is similarly devoid of any adverse employment impact.  Whether or not the procedures involved, such as an increase in the number of administrators present at her review meetings, were applied uniformly to other professors, Goring cannot show that any adverse employment action resulted.  Consequently, these actions do not support a retaliation claim.

In sum, Goring does not adequately allege a genuine issue of material fact on each element of her Title VII retaliation claims, and therefore, summary judgment is proper.  Moreover, any claims based on violation of Louisiana Revised Statute 23:967, Louisiana's anti-reprisal statute, are subject to the same analysis as Title VII retaliation claims.  *Stevenson v. Williamson*, 547 F. Supp. 2d 544, 551 (M.D. La. 2008).  Therefore, based on the above reasoning, summary judgment on these state law claims is also proper.

Goring's submissions only briefly address retaliation under Title IX, and do so only in conclusory language devoid of analysis.  Goring alleges no discernable facts reflecting gender discrimination or bias, but merely cites *Jackson v. Birmingham Board of Education*, for the proposition that Title IX contains anti-retaliatory remedies for sex discrimination.  544 U.S. 167, 176 (2005).  Because the Court finds no evidence in the record of any retaliatory actions based on gender, summary judgment on any Title IX claim is proper.

## **Conclusion**

For the above reasons, Goring has failed to meet the legal standard sufficient to survive judgment as a matter of law.  Thus, the Board's motion for summary judgment is hereby GRANTED on all claims.

Signed in Baton Rouge, Louisiana, on April 13, 2010.

_____

**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**